UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DALE JON OATMAN,

                                Plaintiff,

v.                                                          7:13-CV-595

                                                            (TJM/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

APPEARANCES:                              OF COUNSEL:

Conboy, McKay Law Firm                    PETER L. WALTON, ESQ.
*Counsel for Plaintiff*
407 Sherman Street
Watertown, NY 13601-9990


HON. RICHARD S. HARTUNIAN                 TOMASINA DIGRIGOLI
United States Attorney for the            Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                 STEPHEN P. CONTE, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned for report and recommendation by the

Honorable Thomas J. McAvoy, United States Senior District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that this case be remanded.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is forty-seven years old, and has an eighth grade education. (T. at 35.) He began working at age sixteen and has worked as an unskilled laborer with various companies until roughly 2011. (T. at 36-37.) Plaintiff briefly worked as a taxi driver at some point more than fifteen years ago. (T. at 37.) He alleges disability due to "back problems, problems with both legs, stomach aches, diabetes, high blood pressure, chronic obstructive pulmonary disease, weight loss, back pain, stomach pain, hypertension, pancreatitis, right shoulder rotator cuff injury, bilateral leg pain, peripheral neuropathy of the lower extremities, bulging discs in his lower back, balance problems, shortness of breath, right knee degenerative osteoarthritis, right knee pain, and anxiety." (T. at 16.)

Plaintiff applied for disability insurance benefits and SSI on July 15, 2010. (T. at 13.) The application was denied on December 8, 2010. *Id*. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. The hearing was held by video on December 15, 2011. *Id*. On January 26, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 26.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 1, 2013. (T. at 7-8.) Plaintiff commenced this action on October 18, 2013. (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the

Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any

step a finding of disability or non-disability can be made, the SSA will not review the claim

further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant
> shows that he is not working at a "substantial gainful activity." [20
> C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find
> nondisability unless the claimant shows that he has a "severe
> impairment," defined as "any impairment or combination of
> impairments which significantly limits the claimant's physical or
> mental ability to do basic work activities." [20 C.F.R.] §§
> 404.1520©, 416.920©. At step three, the agency determines whether
> the impairment which enabled the claimant to survive step two is on

3

the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560©, 416.920(f), 416.9630©.

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255,

258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence

scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that Plaintiff was not disabled at step five of the five-step analysis.

(T. at 25-26.) The ALJ found that only Plaintiff's (1) lumbar spine degenerative disc disease, (2)

right knee deformity, and (3) herniated nucleus pulposus of the lumbar spine qualified as

"severe" impairments. (T. at 15.) She found that Plaintiff's alleged neuropathy, COPD, and

right shoulder cuff injury were not supported by medical evidence. (T. at 16.) He also found that Plaintiff's diabetes did not cause any functional limitations, and that his breathing problems were well controlled by medication. *Id*. The ALJ further found that no medical evidence supported the proposition that either Plaintiff's alleged anxiety or his alcohol abuse in remission caused any significant limitations. *Id*.

Then, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to lift and carry ten pounds, stand or walk for two hours per day, and sit for six hours per day. (T. at 20.) The ALJ found Plaintiff capable of sedentary work in the national economy at step five. (T. at 25.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by: (1) failing to properly assess the severity of Plaintiff's impairments; (2) failing to properly evaluate and give controlling weight to the opinions of Plaintiff's treating physician; and (3) failing to properly determine Plaintiff's residual functional capacity. (Dkt. No. 9 at 8-12.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 13.) For the following reasons, I recommend that this case be remanded.

## V.    DISCUSSION

### A.    Severity Determinations

At the second step of the evaluation, the medical severity of a claimant's impairments is considered. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the

claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 404.1520©,

404.1521, 416.920©, 416.921. "Basic work activities" are defined as "the abilities and aptitudes

necessary to do most jobs." *Id.* at §§ 404.1521(b), 416.921(b). These include walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking,

understanding, carrying out, remembering simple instructions, use of judgment, responding

appropriately to supervision, co-workers and usual work situations, and dealing with changes in a

routine work setting. *Id.* The claimant bears the burden of presenting evidence to establish

severity. 20 C.F.R. § 404.1512© (2012). The claimant must demonstrate "that the impairment

has caused functional limitations that precluded him from engaging in any substantial gainful

activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012)

(citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight

abnormality which would have no more than a minimal effect on an individual's ability to work.

*Id*. at 271; SSR 85-28, 1985 WL 56858, at * 2 (1985)[1].

Here, the ALJ notes that Plaintiff has alleged disability due to "back problems, problems

with both legs, stomach aches, diabetes, high blood pressure, chronic obstructive pulmonary

disease, weight loss, back pain, stomach pain, hypertension, pancreatitis, right shoulder rotator

cuff injury, bilateral leg pain, peripheral neuropathy of the lower extremities, bulging discs in his

lower back, balance problems, shortness of breath, right knee degenerative osteoarthritis, right

knee pain, and anxiety." (T. at 16.) She found only Plaintiff's back problems and knee

deformity were "severe." (T. at 15.) Plaintiff contests the finding of "not severe" with regard to

---

[1]        There is no Lexis citation for this document.

7

abdominal pain, neuropathy, and anxiety. (Dkt. No. 9 at 8.)

With regard to Plaintiff's abdominal pain, the ALJ appears to have dismissed it as "not severe," because she does not mention it again after step two, but nowhere in the decision does she discuss her reasoning for this determination. The record is replete with references to Plaintiff's stomach pain and the alleged effect it has on Plaintiff's life. Plaintiff testified that he has constant stomach pain and it often causes him to go days without food. (T. at 40.) Given that Plaintiff also has diabetes, and needs to be on a special diet, this is especially significant. (T. at 47.) He testified that his doctors "know there's something wrong but they can't find it." *Id.* This is reflected in the medical evidence. (T. at 343-359.) Plaintiff testified that in less than a year and a half, he has lost sixty pounds because eating causes him discomfort. (T. at 40.) Because the ALJ has not discussed any of this evidence or her reasoning, it is impossible for this Court to determine if substantial evidence supports her determination that Plaintiff's abdominal pain was not severe.

With regard to Plaintiff's neuropathy, the ALJ notes that "[o]nly Roberto Rivera, M.D., noted any findings that were compatible with neuropathy in the claimant . . . and the claimant has not been diagnosed with this condition by his treating primary care physician." (T. at 16.) However, the ALJ fails to note that, on August 5, 2011, Plaintiff's treating physician prescribed Lyrica for Plaintiff, a medication which is administered in response to "neuropathic pain associated with diabetic peripheral neuropathy" and "neuropathic pain associated with spinal cord injury." *Physician's Desk Reference* 2145 (67th ed. 2013); *see also* T. at 358. Plaintiff also testified extensively about the numbness and tingling in his extremities. (T. at 44-45.) In light of this additional evidence, which was not addressed in the decision, the Court cannot confirm that

the ALJ's determination that Plaintiff's neuropathy was not severe was based on substantial evidence.

In analyzing Plaintiff's anxiety, the ALJ placed "considerable weight" on the Psychiatric Review Technique form completed by Dr. Nobel, a State agency review psychologist. However, the ALJ placed "little weight" on the mental residual functional capacity assessment completed by the same psychologist on the same day after the same examination. (T. at 19.) "It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." *Nix v. Astrue*, No. 07-cv-344, 2009 U.S. Dist. LEXIS 98356, at *16, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.2004)). Because of this conflict between the weight given to various portions of Dr. Nobel's opinion, it is not clear whether the ALJ's determination regarding Plaintiff's anxiety is supported by substantial evidence.

I recommend that this case be remanded for reconsideration of these three impairments. For the remaining impairments, Plaintiff has not challenged the ALJ's finding, and the Court finds that they are supported by substantial evidence in the ALJ's analysis. (T. at 16.)

### C.     Treating Physician Opinion Evidence

Plaintiff argues that the ALJ improperly dealt with medical evidence provided by treating physician Dr. Roache. (Dkt. No. 9 at 10.) For the reasons discussed below, I find that the ALJ did not properly analyze Dr. Roache's opinion evidence.

As discussed above, an ALJ may not pick and choose portions of a medical opinion to adopt a formulation which conforms to a certain decision. *Nix*, No. 07-cv-344, 2009 U.S. Dist. LEXIS 98356, at *16, 2009 WL 3429616, at *6 (citing *Robinson v. Barnhart*, 366 F.3d 1078,

9

1083 (10th Cir.2004)).  Here, the ALJ gave "great weight" to the opinion of Dr. Roach, but disregarded a particular finding by Dr. Roach that Plaintiff could not sit for at least six hours during an eight-hour workday.  (T. at 23.)  This six hour threshold is determinative of Plaintiff's ability to do sedentary work, of which the ALJ found him capable.  (T. at 25); SSR 96-9p.  The ALJ disregarded this statement for two reasons.

First, the ALJ states that "there is nothing in Dr. Roache's records documenting that the claimant has any problems sitting."  (T. at 23.)  In this instance, she refers to a February 23, 2011, Medical Source Statement in which Dr. Roache indicated that Plaintiff could not sit for six hours in a work day.  (T. at 23, citing T. at 340.)  On that document, a follow-up question asks, "[w]hat medical/clinical finding(s) support your conclusions," and Dr. Roache answered that Plaintiff's spasms in back muscles, arthritis, disc dessication, disc bulging, as indicated in his MRI results, support his conclusion that Plaintiff cannot sit for six hours.  (T. at 340.)  An "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).  It is improper for the ALJ to make any sort of medical determination or to set her own expertise against that of the treating physician.  *Id.*  (citation omitted); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (stating that the ALJ, without citing to any medical opinion, set his expertise against that of physicians who submitted opinions to him).  While Dr. Roache's treatment notes do not specifically mention "sitting," the ALJ's determination that Dr. Roache's conclusion was an incorrect medical determination, is not supported by the medical treatment records. Plaintiff's back pain was well-documented in the treatment notes, and the MRI showed diffuse disc bulges, disc dessication, and osteoarthritis.  (T.

at 352-89, 251-52.)  Generally, where a treating physician interprets MRI reports showing back injury to support a determination that a patient has limitation sitting, this determination is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is entitled to deference over the contradicting opinion of a consultative examiner, which is based on a single examination.  *See, e.g., Nagle v. Colvin*, No.5:11-CV-855 (NAM), 2014 U.S. Dist. LEXIS 84820, at *14-*15, *63-*64, 2014 WL 2815780 at *5, *27 (N.D.N.Y. June 23, 2014) (remanding an ALJ finding of "not disabled" where the ALJ gave little weight to the opinion of a treating physician that claimant had limitations on sitting, which was supported by MRI reports showing disc protrusions, and other evidence indicating back spasms).  Therefore, it was improper for the ALJ to substitute her own medical opinion for that of Dr. Roache's opinion, as provided in the February 23, 2011, Medical Source Statement.

Second, the ALJ disregarded the second Medical Source Document, which likewise indicated that Plaintiff was unable to sit for six hours (T. at 392), because it was inconsistent with the objective medical and other evidence of record.  (T. at 24.)  She found that "there are simply no clinical or diagnostic findings of record by Dr. Roache . . . that would that would account for" the second Medical Source Document, which showed more severe limitations than the first one. On the issue of whether Plaintiff could sit for six hours, these two documents agree that he could not.  However, any lack of evidence for a changed diagnosis implicates the ALJ's duty to complete the record.

The ALJ has a duty to affirmatively develop the administrative record in light of the non-adversarial nature of a benefits proceeding, regardless of whether the claimant is represented by counsel.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations omitted).  This includes a

duty to contact treating and other medical source to clear gaps in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. *Id.* at 80 (citing *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). This must be done before an ALJ can reject a treating physician's diagnosis. *Id*. The Secretary's regulations "state that '[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make *every reasonable effort* help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d) (2012) (emphasis added); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Moreover, "a treating physician's 'failure to include . . . support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'" *Rosa*, 168 F.3d at 80 (quoting *Clark*, 143 F.3d at 118).

Therefore, insofar as the ALJ felt that the opinions in the two medical source statements were different, but could not find a reason for the change in the treatment notes, the ALJ should have contacted Dr. Roache to complete the record. However, because Dr. Roache's first Medical Source Statement was strongly supported by an MRI report of back spasms and vertebral problems, and the case must be remanded for that reason, the Court need not reach the issue of whether the ALJ actually erred by failing to contact Dr. Roache in this regard.

The ALJ also discredited this later report because it appeared to be filled out by the

Plaintiff, but signed by his doctor. (T. at 24.) Notably, this is not necessarily grounds to disregard the opinion, because Plaintiff or any other individual may have filled out the form before the physician signed it. This, too, may have been clarified by contacting Dr. Roache.

For the foregoing reasons, I find that the ALJ's analysis of Dr. Roache's opinion evidence is not supported by substantial evidence and recommend that it be reconsidered on remand.

### D.    Residual Functional Capacity

Plaintiff argues that the ALJ improperly assessed his RFC. (Dkt. No. 9 at 12.) Because of the problems with the ALJ's medical opinion analysis and severity determinations, the Court cannot say that the RFC determination is supported by substantial evidence. In addition, three other problems exist with the ALJ's RFC analysis.

### 1.    Plaintiff's Credibility

The ALJ found the Plaintiff's testimony concerning the severity of his symptoms and limitations to be not credible while determining his RFC. (T. at 22.) However, the reasoning by which the ALJ made this determination is not supported by substantial evidence.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529 (2012); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5

(N.D.N.Y. Mar. 3, 1998) and SSR 96-7p. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3) (2012).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

Here, the ALJ properly determined that Plaintiff's medically determinable conditions could lead to his alleged limitations on sitting, walking, and standing. (T. at 22.) However, the ALJ's determination that Plaintiff's testimony about the severity of his limitation was not credible, is not supported by substantial evidence. ALJ first notes, when analyzing Plaintiff's back and knee limitations, that "claimant's activities show that he has actually been doing more than what his allegations claim he is capable of performing" and that "[t]he claimant is clearly able to engage in a wide range of independent daily activities." (T. at 22.) The Plaintiff, she remarks, "has a girlfriend and another friend with whom he socializes. . . can also attend to his own personal care, shower, bathe, dress himself, do some shopping, groom himself, cook and

15

prepare simple meals, do light general cleaning, do light laundry, do some household chores, do some dishes, go out to appointments, watch television, use a computer, watch movies, and manage money." *Id*.

This generalization of Plaintiff's abilities does not provide substantial evidence to find Plaintiff's testimony about his limitations not credible. Plaintiff's ability to socialize with his girlfriend and friends, watch television or movies, and manage money are irrelevant to his physical limitations as they apply to lifting, standing, or sitting. All of these actions could be performed without exertion, and indeed, Plaintiff testified that he spends seven out of eight hours during an average work day lying down, in addition to the ten hours he spends in bed resting. (T. at 46.) He testified that when he is socializing with his girlfriend, they do not leave the house, but rather passively watch movies together. (T. at 49.) There is no indication that this testimony belies any of Plaintiff's alleged limitations with regards to standing, sitting, or walking.

The ALJ's statements that Plaintiff can "do light general cleaning," "do some household chores," and "do some dishes" all refer to two statements by the Plaintiff that he could pick up after himself and do a few dishes. (T. at 41, 48-49.) The statements appear to be redundant in this instance. The ALJ notes that Plaintiff can attend to his own personal care, shower, bathe, dress himself, groom himself, and go out to appointments, but it is well settled that "a claimant need not be an invalid to be found disabled." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). "Moreover, 'when a disabled person gamely chooses to endure pain in order to pursue important goals', such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'" *Id.* at 81-82 (citing *Nelson v. Bowen*, 882 F.2d 45,

49 (2d Cir. 1989)). A "claimant need not demonstrate that he is completely helpless or totally disabled." *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983). The mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity. *Lecler v. Barnhart*, No. 01 Civ. 8659 (SHS), 2002 U.S. Dist. LEXIS 22070, at *18-19, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Gold v. Sec. of Health, Ed. & Welfare*, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).

Furthermore, the ALJ notes Plaintiff's ability to "do some shopping." (T. at 22.) However, Plaintiff never testified that he could shop. He actually testified that his mother used to do all the shopping, and following his mother's passing, his sister would. (T. at 41.) In his initial application for benefits, he told the Social Security Administration that he could not shop. (T. at 59.) In a function report, Plaintiff reported that he could not do household work, and reiterated that he was unable to shop. (T. at 152-53.) He also reported that he cannot do chores. (T. at 156.) A disability report (Form SSA-3441), indicates that Plaintiff again reported that his mother did all the household chores and laundry. (T. at 165.) At his consultative psychiatric examination with Dr. Noia, Plaintiff told the doctor that he did not shop. (T. at 302.) In fact, the only indication in the record that indicates otherwise, is a single statement in the "activities of daily living" portion of Dr. Rivera's consultative examination report, in which Dr. Rivera says briefly, "[s]hopping very little." (T. at 306.) Given the weight of evidence, this statement by Dr. Rivera is a "mere scintilla" insufficient to convince a reasonable mind that Plaintiff had the ability to go shopping. As such, the ALJ's statement that Plaintiff could shop is not supported by substantial evidence.

The ALJ also refers to a statement by Plaintiff stating that he "seldom had work 'on the

17

books' anyway," and she appears to use this statement to challenge his credibility. (T. at 23.) Nowhere in the record has Plaintiff made this statement. Because the ALJ has based her adverse credibility finding, which is crucial in the determination of Plaintiff's claim, on a misunderstanding of the evidence and Plaintiff's testimony, the credibility finding "did not comply with the ALJ's obligation to consider 'all of the relevant medical and other evidence,' and cannot stand." *Genier v. Astrue*, 606 F.3d 46 (2d Cir. 2010) (citing 20 C.F.R. § 404.1545(a)(3)). Therefore, the ALJ's determination of Plaintiff's credibility is not based on substantial evidence, and should be remanded.

## 2. The ALJ's Procedure in Determining Residual Functional Capacity

In addition to the issues concerning the credibility of Plaintiff, the ALJ did not properly analyze the remaining evidence in determining Plaintiff's RFC.

First, the ALJ did not properly explain her reasoning for her determination. The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). Each assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SSR 96-8p. The RFC may then be expressed in terms of the exertional levels (sedentary, light, etc.) to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440. It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546© (2012). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1569a(b) (2013).

The Second Circuit has found that failure to specify the basis for a conclusion as to RFC is reason enough to vacate a decision of the Commissioner. *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990) (stating that because the Secretary failed to articulate the basis for the findings as to claimant's residual functional capacity, the court vacates and remands). Moreover, remand is appropriate where the court is unable to fathom the Commissioner's rationale in relation to the evidence in the record without further findings or explanation for the decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

Here, the ALJ determined that Plaintiff retained the RFC to "lift and/or carry 10 pounds on an occasional basis; lift and or carry 10 pounds on a frequent basis; stand and/or walk for a total of about two hours; and sit for a total of about six hours." (T. at 20, 22.) While she does go into great detail about Plaintiff's medical history concerning his knee and back (T. at 21-22), she does not explain how she reached the figures of weight and time from the above determination. Both medical source statements from Plaintiff's treating physician, to which the ALJ claims to have given "great weight" (T. at 23), indicate that Plaintiff could not sit for six hours in an eight hour work day. (T. at 340, 392.) The ALJ appears to have relied exclusively on a consultative medical examination by Dr. Rivera, which noted no limitation to sitting. (T. at 23, 309.) However, as noted above, "[a]n ALJ should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419 (where an ALJ erred by disregarding the opinion of a treating physician because a consultative examiner found differently after one examination). She also notes that Dr. Rivera found mild or moderate limitations in other areas, but this determination alone is not grounds to find that Plaintiff can perform sedentary work. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (finding that

consultative examiner's use of the terms "moderate" and "mild," without additional information, did not permit the ALJ to make the necessary inference that the plaintiff can perform the exertional requirements of sedentary work) (citing *Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1988)). She notes that Plaintiff "had to be prompted by his attorney to remember what his allegations actually were with regard to his limitations while sitting" (T. at 23), but she does not cite a location in the testimony of record, and this Court cannot find where his attorney needed to prompt him to remember his sitting limitations. The ALJ has not provided enough explanation of her reasoning regarding the RFC and the evidence of record for this Court to fathom her rationale for it.

Second, when determining RFC, an ALJ must consider all of the claimant's impairments, including impairments which are not severe. 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p. While the ALJ acknowledges this requirement (T. at 15), she has only considered Plaintiff's knee and back pain in her RFC analysis. (T. at 22.) She has not mentioned or considered any of Plaintiff's non-severe impairments. A proper consideration of Plaintiff's RFC which included his non-severe impairments may have had a different result. Therefore, this error by the ALJ is not harmless, and should be properly considered on remand.

### E.     Conclusion

Because of the reasoning set forth above, this Court finds that the ALJ's determination that Plaintiff was not disabled was determined using incorrect legal standards, and is not supported by substantial evidence. I therefore recommend that this matter be remanded to the Commissioner.

**WHEREFORE,** it is hereby

20

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[2] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 30, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[2]     Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).